IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CLARENDON REGENCY IV, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Case No. 1:20-cv-01433 (RDA/IDD) |
| ) | |
| EQUINOX CLARENDON, INC., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Clarendon Regency IV, LLC's ("Plaintiff") Motion for Summary Judgment (Dkt. 2) and Plaintiff's Motion to Dismiss Count I of Defendant Equinox Clarendon, Inc.'s Amended Counterclaim (Dkt. 52). The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The Motions are now fully briefed and ripe for disposition. Considering the Motions together with Plaintiff's supporting memoranda (Dkt. Nos. 2-1; Dkt. 52); Defendant's oppositions (Dkt. Nos. 39; 57); and Plaintiff's replies in further support of the Motions (Dkt. Nos. 42; 59), it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. 2) is DENIED and Plaintiff's Motion to Dismiss (Dkt. 52) is DENIED.

I.  BACKGROUND

Although the parties dispute certain facts, the following facts are uncontested except where noted.

Plaintiff filed a Complaint on November 19, 2020, and this Court granted Plaintiff's motion for leave to file an Amended Complaint on April 19, 2022, generally alleging one count that Defendant breached certain conditions of a commercial lease ("Lease") relating to the construction

and operation of a fitness club in Arlington, Virginia. *See generally* Dkt. Nos. 1; 71. Under the Lease, Defendant agreed to operate an "upscale, full-service prototypical Equinox Fitness Club for a term of at least fifteen (15) years." Dkt. 71 ¶ 7. Plaintiff alleges, however, that Defendant failed to perform certain obligations under the Lease prior to opening the fitness club, breaching the Lease. *Id*. ¶¶ 55-63.

Under the terms of the Lease, both Plaintiff and Defendant agreed to perform certain obligations prior to opening the fitness club. *Id.* ¶ 11; Dkt. 1-1 at 13. As landlord, Plaintiff agreed to "make significant structural and architectural alterations and modifications [] to the approximately 100,000 square foot building" where the fitness club was to be located. *Id*. ¶ 8. These changes amounted to at least $5,868,041.00 in structural and architectural renovations. *Id.* ¶ 9. As tenant, Defendant was to provide Plaintiff with construction work plans within ninety days of receiving Plaintiff's final construction drawings. *Id*. ¶ 11. Defendant was also required to obtain necessary construction permits and perform its own construction work on the building. *Id*. ¶ 20; Dkt. 1-1 at 13-14.

On or about March 19, 2019, Plaintiff provided Defendant with final construction drawings, thus triggering Defendant's obligation to submit its own work plans to Plaintiff within ninety days. *See id.* ¶ 12; Dkt. 2-6. When Defendant had not submitted the plans by June 18, 2019—the expiration of the 90-day period—Plaintiff notified Defendant of its alleged tardiness on June 24, 2019. Dkt. 71 ¶ 14; Dkt. 2-7.[1] By August 2, 2019, Defendant still had not submitted the requisite work plans to Plaintiff and, despite Plaintiff flagging that Defendant had five business days to do so pursuant to Article 2.6 of the Lease, Defendant failed to submit the work plans. Dkt.

---

[1] While Defendant does not dispute that this would be the deadline to submit its own work plans, it contests the fact that Plaintiff provided its *final* construction drawings. Dkt. 39 at 23-24.

2

71 ¶¶ 15-18; Dkt. 2-8.  So on August 21, 2019, Plaintiff notified Defendant that Article 1.1(i) of the Lease was modified to alter the Commencement Date and that Defendant had "waived its right to terminate the Lease, as provided for in Article 2.6 of the Lease, due to its failure to timely submit [its] Work Plans" to Plaintiff.  Dkt. 71 ¶ 19; Dkt. 2-9 at 2.  Defendant filed its initial permit application on December 16, 2019.[2]  Dkt. 71 ¶ 23.  And eventually, on March 19, 2020, Defendant's Vice President advised Plaintiff that "all of [Equinox's] construction and development projects" were being placed on hold because of the threat of COVID-19.  *Id.* ¶ 25.  Defendant followed up with Plaintiff on April 1, 2020 with a letter indicating that it would be "unable to commence previously planned construction projects for an indefinite period," due to the "unforeseeable [COVID-19] crisis and the government response" which had "rendered performance of [Defendant's] Lease obligations commercially impracticable and impossible [] for an indefinite period."  Dkt. 2-13 at 2-3; Dkt. 71 ¶ 26.  That letter also sought to preserve "any rights" of Defendant under the Lease.  Dkt. 2-13 at 3.  Upon confirming that as of April 1, 2020, the local Arlington County permitting office was fully functional, Plaintiff sent a letter on April 10, 2020 rejecting Defendant's April 1, 2020 letter, advising that Plaintiff expected Defendant to adhere to the performance obligations in the Lease.  Dkt. 71 ¶ 27; Dkt. 2-1 at 10; Dkt. 2-14 at 2-3.[3]

---

[2] Plaintiff originally claimed the Permit Filing Date was January 13, 2020 in the original Complaint but has since revised that date to October 29, 2019 in the Amended Complaint.  Dkt. 1 ¶ 20; Dkt. 71 ¶ 20.  Defendant argues that the Permit Filing Date is the date it filed its initial permit application with Arlington County—December 16, 2019.  Additionally, Defendant's letter to Plaintiff on August 28, 2020 appears to mistakenly state that the Permit Filing Date was December 13, 2020.  The letter further admits that no permits had been obtained within 240 days from that date.  *See* Dkt. 2-17 at 2.

[3] Defendant observes that Plaintiff only cites to the Fairfax County Land Development Services Office operation status at this time and not the Arlington County office, which was

3

Plaintiff then delivered the Premises to Defendant in accordance with its obligations under the Lease on May 21, 2020 (the "Delivery Date"). Dkt. 71 ¶ 31; Dkt. 2-3 ¶ 20. But when Defendant had still not obtained the necessary permits to complete its work obligations under the Lease, Plaintiff sent Defendant a letter on July 9, 2020 advising the company of its perceived failures, that it was therefore in default under Article 18.1 of the Lease, and that Defendant had thirty days to cure under the Lease. Dkt. 71 ¶ 35; Dkt. 2-15 at 2. More than 30 days later, on August 28, 2020, Defendant attempted to terminate the Lease. Dkt. 71 ¶ 38; Dkt. 2-17 at 2.[4] In response, Plaintiff asserted that the Commencement Date began on November 17, 2020, 180 days after the Delivery Date, and that Defendant has not begun paying the "Minimum Annual Rent and Tenant's Proportionate Share of Common Area Costs, Taxes and Insurance." Dkt. 71 ¶¶ 43-44; Dkt. 1-1 at 5.[5]

Plaintiff brought this lawsuit on November 19, 2020, alleging one count of breach of contract. *Id*. at 8. The same day, Plaintiff filed its Motion for Summary Judgment. Dkt. 2. On February 10, 2021, the Court granted Defendant's unopposed motion to stay the briefing on Plaintiff's Motion for Summary Judgment (Dkt. 2), pending the Court's decision on Defendant's Motion to Dismiss, which this Court then lifted following its denial of Defendant's Motion to Dismiss on September 30, 2021. *See* Dkt. Nos. 30; 34. Following this Court's briefing schedule

---

responsible for reviewing Defendant's permit applications. Dkt. 39 at 22; *see also* Dkt. 39-1 at 84 (indicating Arlington County as the "Governing Agency").

[4] The parties dispute whether Equinox's failure to respond to the July 9, 2020 notice constituted Defendant's waiver of its termination right. *See* Dkt. Nos. 71 ¶ 39-40; Dkt. 39 at 23-24.

[5] Defendant disputes that the Commencement Date began at all, instead taking the position that it terminated the Lease prior to that date. Dkt. 39 at 18.

order (Dkt. 34), Defendant filed its Opposition to Plaintiff's Motion for Summary Judgment on October 27, 2021. Dkt. 39. Plaintiff filed its Reply on November 2, 2021. Dkt. 42.

On October 14, 2021, Defendant filed its Answer to the Complaint and a Counterclaim against Plaintiff. Dkt. 35. Plaintiff then moved to dismiss Defendant's Counterclaim on November 4, 2021. Dkt. 44. Defendant amended its counterclaim ("Amended Counterclaim"), seeking (1) declaratory judgment that Defendant's August 28, 2020 termination of the Lease was effective and (2) damages for Plaintiff's breach of the Lease in reletting the premises to another company. Dkt. 51 ¶ 1. The amendment prompted this Court to dismiss the original Counterclaim as moot. *See* Dkt. 68. On December 2, 2021, Plaintiff moved to dismiss Count I of the Amended Counterclaim. Dkt. 52.[6] Defendant filed its Opposition on December 16, 2021. Dkt. 57. And Plaintiff filed its Reply on December 22, 2021. Dkt. 59. The Court then granted Plaintiff's motion to amend its complaint on April 19, 2022, and the Amended Complaint was entered onto the docket. Dkt. Nos. 70; 71.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is appropriate only if the record shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hantz v. Prospect Mortg., LLC*, 11 F. Supp. 3d 612, 615 (E.D. Va. 2014) (quoting Fed. R. Civ. P. 56(a)). "A material fact is one 'that might affect the outcome of the suit under the governing law.' A disputed fact presents a genuine issue 'if the evidence is such that a reasonable jury could return a verdict for the non-moving party.'" *Hantz*, 11 F. Supp. 3d at 615-16 (quoting *Spriggs v. Diamond Auto. Glass*, 242 F.3d 179, 183 (4th Cir. 2001)). The moving

---

[6] Contrary to this Court's Local Civil Rule 7(F)(1), Plaintiff filed its Motion to Dismiss without a separate written brief.

party bears the "initial burden to show the absence of a material fact." *Sutherland v. SOS Intern., Ltd.*, 541 F. Supp. 2d 787, 789 (E.D. Va. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

On summary judgment, a court reviews the evidence and draws all reasonable inferences in the light most favorable to the non-moving party. *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 570 (4th Cir. 2015) (quoting *Tolan v. Cotton*, 572 U.S. 650, 657 (2014)); *McMahan v. Adept Process Servs., Inc.*, 786 F. Supp. 2d 1128, 1134-35 (E.D. Va. 2011) (citing *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)). This is a "fundamental principle" that guides a court as it determines whether a genuine dispute of material fact within the meaning of Rule 56 exists. *Jacobs*, 780 F.3d at 570. "[A]t the summary judgment stage[,] the [Court's] function is not [it]self to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

A factual dispute alone is not enough to preclude summary judgment. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48. A "material fact" is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). The substantive law determines whether a fact is considered "material," and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). A "genuine" issue concerning a "material

fact" arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor.  *Anderson*, 477 U.S. at 248.

### III.  ANALYSIS

#### A.  Plaintiff's Summary Judgment Motion

Plaintiff argues that it delivered its final construction drawings on March 20, 2019, which began Defendant's obligation to submit its work plans to Plaintiff within 90 days.  Dkt. 2-1 at 5; Dkt. 2-6 at 2.  But because Defendant never submitted those plans and never obtained the required permits, Plaintiff argues Defendant has breached its obligations under Article 2.6 of the Lease.  In accordance with Article 18.1(b) of the agreement, Plaintiff contends that Defendant received Plaintiff's Notice of Default on July 10, 2020 and following the contractually prescribed 30-day window to cure, Defendant officially was in default for having failed to timely cure its alleged breach.  According to Plaintiff, Defendant "abandoned all attempts to obtain the required permits as early as March 19, 2020," when it noticed its business operations were on hold "due to the threat of COVID-19."  Dkt. 2 at 8.

Instead, Plaintiff maintains that Defendant "was fully capable" to continue to pursue obtaining the requisite permits, especially because the Fairfax County Land Development Services Office was processing building permits at the time Defendant issued its on hold notice to Plaintiff. Relatedly, Plaintiff submits that the Permit Filing Date—the deadline for Defendant to submit its permit applications—was October 29, 2019 but Defendant never submitted its permit applications until December 16, 2019.[7]  Lastly, Plaintiff asserts that Defendant waived its right to terminate the

---

[7] Article 2.6 of the Lease defines "Permit Filing Date" as within 10 business days after the date on which Plaintiff approved Defendant's Work Plans.  Dkt. 1-1 at 13.

Lease because, based on Plaintiff's construction of the events, Defendant neglected to remedy its failure to timely submit its work plans for Plaintiff's approval within 5 business days.

In response, Defendant argues that the crux of the case is (1) whether Defendant diligently pursued the requisite permits and (2) whether Defendant validly exercised its right to terminate the Lease. Defendant disputes Plaintiff's presentation of the facts at multiple stages of the parties' communications. First, Defendant maintains that the work plans Plaintiff provided Defendant in March of 2019 were not final plans, and therefore the 90-day window to submit Defendant's work plans had not yet begun to run. Instead, Defendant proffers evidence suggesting that Plaintiff understood its drawings were not final. As a consequence of the parties' disagreement, Defendant claims that it "communicated regularly" with Plaintiff "to resolve the missing plans and specifications" for Plaintiff's work plans. Dkt. 39 at 10; Dkt. 39-2.

Not until mid- to late June of 2019 does Defendant argue Plaintiff delivered final plans and the 90-day clock began to run. Defendant cites to an email from the Director of Architecture and Planning at Equinox Holdings, Inc., Defendant's parent company, to Plaintiff's employee Jason Yanushonis. Defendant asserts this email confirms its view that Plaintiff had delivered its final work plans. Dkt. 39-2 at 16. In doing so, Defendant argues that Plaintiff's work plans became final on June 27, 2019, thereby making Defendant's submission of its work plans on September 27, 2019 timely because the submission fell within 90 days of that date. Under that telling of events, Defendant argues it diligently pursued obtaining all necessary permits in accordance with Article 2.6 of the Lease. Its efforts included hiring an expediter to push the permit approval process through prior to the emergence of COVID-19 and paying $24,000 in all necessary governmental fees and charges related to the permitting application process. When Defendant exercised its termination right, Defendant notes that it submitted two iterations of permit applications to

8

Arlington County that had been rejected and declined to pursue a third round only because it elected to terminate the Lease.  By this presentation of facts, Defendant argues that it exercised a valid right of termination of the Lease and Guaranty after the 240-day period since the Permit Filing Date as required by the Lease.

The matters left to this Court at this stage are entirely fact-bound.  Because a number of those facts are both material and disputed between the parties, this Court must deny Plaintiff's motion for summary judgment.  This Court identifies those genuine disputes of material fact below.

### i. When Plaintiff Delivered Its Final Construction Drawings to Defendant

Exhibit C-2(A) of the Lease provides that Defendant "shall, within (90) days after [Defendant's] receipt of copies of Landlord's Approvals and Landlord's final plans and specifications for Landlord's Work, deliver to Landlord for its review and approval [Tenant's Work Plans]."  Dkt. 1-2 at 13.  The term "Landlord's final plans and specifications" is undefined in the Lease and appears only once in the agreement.  *See id.*  The parties dispute when the 90-day clock began to tick for Defendant.  Plaintiff argues that clock began on March 20, 2019, while Defendant argues that those drawings were incomplete blueprints and that Plaintiff was made aware of the need to refine them.[8]  *Compare* Dkt. 2-6 at 2 *with* Dkt. 39-2 ¶¶ 9-13, 17.  Therefore, by Defendant's narrative, Plaintiff's work plans were not deemed final until June 27, 2019, when Defendant acknowledged as much.[9]  While Plaintiff questions the veracity and authenticity of the

---

[8] There appears to be no dispute as to the fact as to the condition precedent that Defendant had received copies of Landlord's Approvals as the Lease sets out in Article 2.7 of the Agreement.

[9] As part of this factual dispute, Defendant maintains that Plaintiff sent another set of plans and specifications when Defendant allegedly made clear to Plaintiff its view that the March 20, 2019 package did not entail the final plans and specifications.  If true, that would circumstantially suggest Plaintiff understood that its March 20, 2019 package did not provide Defendant with the

declaration to which Defendant relies in contesting the date of Plaintiff's final work plans, this Court accepts the non-moving party's exposition of the events for purposes of resolving the summary judgment motion because Defendant's evidence is a sworn statement. *See Magnuson v. Peak Technical Servs., Inc.*, 808 F. Supp. 500, 504 (E.D. Va. 1992).

Whether Plaintiff delivered its final plans and specifications is a material fact in this case. That determination impacts whether Defendant waived its right to termination under Articles 2.6 and/or defaulted under Article 18.1(b) of the Lease and thus breached the agreement when it sought to terminate.[10] *See Med. Shoppe Int'l, Inc. v. Siddiqui*, 549 F. App'x 131, 135 (4th Cir. 2013)

---

final plans and specifications necessary to begin the 90-day period for Defendant to provide its work plans.

[10] Article 2.6 provides in pertinent part:

> If Tenant fails to timely submit Tenant's Work Plans for Landlord's approval, or to resubmit the same within ten (10) days after receiving any comments from Landlord, or if Tenant fails to submit its application for Permits on or before the Permit Filing Date, or if Tenant otherwise fails to diligently pursue its Permits, and in any such event, such failure continues for a period of five (5) business days following Tenant's receipt of written notice of the act or omission giving rise to such failure from Landlord with the following notation (in bold face and capitalized) . . . . Article 1.1(i) of this Lease shall be modified to provide that the Commencement Date shall be the earlier of (i) [180] days after the Delivery Date and (ii) the date on which Tenant opens for business to the general public in the Premises . . . *and Tenant shall be deemed to have waived its right to terminate provided for in this Paragraph.* If Landlord and Tenant fail to obtain the Permits within two hundred forty (240) days after the Permit Filing Date, either Landlord or Tenant (provided Tenant has used diligent efforts to obtain Permits []) may terminate this Lease by giving the other written notice . . . .

Dkt. 1-1 at 13-14 (emphasis added). Article 18.1 provides for an event of default if:

> Tenant fails in the observance or performance of any of its other covenants, agreements or conditions provided for in this Lease, and said failure shall continue for a period of thirty (30) days after written notice thereof from Landlord to Tenant . . . .

*Id.* at 36.

(determining that a "genuine issue of material fact exists regarding whether certain conditions precedent were satisfied"). It is not within the province of this Court to assess whether the plans were indeed final. That fact remains disputed due to sufficient evidence proffered by Defendant that could lead a reasonable jury to find in favor of Defendant. *Anderson*, 477 U.S. at 248.

### ii. Whether Defendant Diligently Pursued Its Permits

Among other conditions precedent to satisfy the permit application process, the Lease requires that Defendant "diligently pursue" obtaining the necessary permits "provided [Plaintiff] has obtained and delivered to [Defendant] all required final and unappealable Landlord Approvals." Dkt. 1-1 at 13. The term "diligently pursue" is defined in that same Article to include "payment of all fees and charges, providing all reasonably requested information and data to the governmental agencies in a timely manner, hiring an expediter, and otherwise reasonably cooperating with the governmental agencies in an expeditious manner." *Id.* at 14. The uncontroverted record, at the time of briefing Plaintiff's Motion,[11] suggests that Defendant did in fact apply for permits. Nonetheless, the parties dispute whether the actions taken by Defendant amount to the "diligently pursue" standard imposed by the Lease when Defendant elected not to pursue a third round of permit applications with Arlington County because of the COVID-19 pandemic. The Permit Filing Date also appears in dispute and that determination factors into the diligence determination too.[12] Whether these reasons trip the diligence threshold imposed by the

---

*Id.* at 35.

[11] At the time of briefing, discovery had not been completed, and therefore additional factual disputes may arise. *See* Dkt. 65.

[12] *See supra* note 2; Dkt. 71 ¶ 56 ("Equinox was contractually obligated to apply for Tenant's Permits by the Permit Filing Date, and failed to do so.").

Lease "is a question of fact, and resolution by summary judgment is inappropriate." *See Rock Creek Vill. Assocs. Ltd. P'ship v. McDonald's Corp.*, No. HAR 93-112, 1993 WL 460836, at *3 (D. Md. Sept. 14, 1993) (assessing a similar "diligently pursue" permit requirement and determining that such an inquiry is a question of fact).

Accordingly, significant genuine issues of material fact remain and Plaintiff's motion for summary judgment will be denied.

### B. Plaintiff's Motion to Dismiss

Plaintiff seeks to dismiss Count I of Defendant's Amended Counterclaim seeking declaratory judgment as to whether the Lease was or was not in breach. From Plaintiff's vantage, Defendant's first counterclaim seeks to obtain a duplicative determination of Plaintiff's breach of contract claim. On that basis, Plaintiff urges this Court to deny Count I of Defendant's Amended Counterclaim.

According to Defendant, Plaintiff's sole cause of action is that Defendant allegedly failed to diligently pursue its permits. Moreover, Defendant contends that any finding that it waived its right to terminate when it allegedly failed to timely submit its work plans to Plaintiff "is only relevant as a defense" to Plaintiff's lack of diligent pursuit claim against Defendant. Dkt. 57 at 5. If Defendant is found to have diligently pursued those permits, whether the contract was validly terminated remains an open question. This context paints Count I of the Amended Counterclaim as addressing an issue that is not necessarily resolved on its own accord in Count I of the Complaint. In order to prevent future litigation on that issue, Defendant seeks a declaratory judgment as to the validity of the contract termination by Defendant.

28 U.S.C. § 2201(a) gives federal courts the authority to consider actions for declaratory relief provided that there is a "case of actual controversy within its jurisdiction." Such a remedy

12

permits a court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought" with the "force and effect of a final judgment." 28 U.S.C. § 2201(a). Such judgments are appropriate when they "(1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998).

This Court agrees with Defendant. While Plaintiff provided written notice on June 24, 2019 to Defendant that it had allegedly run afoul of the Lease's timeline for submitting its work plans, Plaintiff merely asked Defendant to "submit a completed set of drawings for Landlord review as soon as possible." Dkt. 2-7 at 2. In its August 6, 2019 letter to Defendant, Plaintiff notified Defendant that in failing to timely provide its work plans, Defendant may waive its right of termination. Dkt. 2-8 at 2. And in its August 21, 2019 letter to Defendant, Plaintiff only confirmed Defendant had waived its right to terminate the Lease. Dkt. 2-9 at 2. Whereas, the July 10, 2020 letter delivered to Defendant expressly identifies Defendant's alleged failure to diligently pursue its permitting obligations and definitively notes that Defendant stood "in default of the Lease." Dkt. 1-5 at 2. Article 18.2 further provides that in the event of a default under Article 18.1, Plaintiff "may treat the occurrence of such event as a breach of this Lease" and "[b]ring suit for the collection of Rent as it accrues . . . and damages including consequential damages." Dkt. 1-1 at 36. Put simply, it is Defendant's alleged failure to diligently pursue that forms the basis of Plaintiff's sole breach of contract claim, not Defendant's attempt to terminate the Lease after having allegedly waived its termination right. As a result, Plaintiff's allegation that Defendant failed to diligently pursue its permit requirements under the Lease is the only basis on which Plaintiff can bring a breach of contract claim.

Considering the potential outcomes of this action, if Defendant is found not to have diligently pursued its permits, the factfinder must necessarily assess whether the Lease was validly terminated because Plaintiff seeks damages for Rent accruing after the time Defendant sought termination. *See* Dkt. 71 ¶ 52; *id.* at 10. Indeed, Article 2.6 provides that Defendant may terminate the Lease only if Defendant "has used diligent efforts to obtain Permits." Dkt. 1-1 at 14. Defendant has also required an inquiry into the validity of the termination in Count II of its Amended Counterclaim, which alleges that if Defendant is found to have not diligently pursued its permits, Plaintiff has improperly leased out the premises to another party. *See* Dkt. 51 ¶¶ 43-53.

However, if Defendant is found to have been diligent, this determination alone does not require the factfinder to also assess whether the contract was validly terminated. It simply precludes Plaintiff from obtaining a judgment for damages against Defendant on its breach of contract claim. The analysis requires an extra step: asking whether Defendant waived its termination right in connection with its alleged untimely submission of its work plans. *See Shire LLC v. Mickle*, No. 7:10-cv-00434, 2011 WL 863503, at *2 (W.D. Va. Mar. 10, 2011) (denying a motion to dismiss a counterclaim for declaratory relief because the non-moving party was "entitled to seek more than simply a defensive victory" and instead was "entitled to settle and clarify the broader controversy, something the resolution of [the plaintiff's] breach-of-contract claims may or may not accomplish"). Declaratory relief in this instance serves the purpose of 28 U.S.C. § 2201(a) by "clarifying the rights of the parties and removing the specter of uncertainty." *Id.* For that reason, this Court will permit Count I of Defendant's Amended Counterclaim to proceed.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. 2) is DENIED; and it is

FURTHER ORDERED that Plaintiff's Motion to Dismiss (Dkt. 52) Count I of Defendant's Amended Counterclaim is DENIED.

It is SO ORDERED.

Alexandria, Virginia
May 11, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge