IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| CLARENDON REGENCY IV, LLC, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | |
| v.   ) | Civil Case No. 1:20-cv-01433 (RDA/IDD) |
| ) | |
| EQUINOX CLARENDON, INC., ) | |
| ) | |
| Defendant/Counterclaimant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff/Counter-Defendant Clarendon Regency IV, LLC's ("Plaintiff") Motion to Exclude the expert testimony of Chris Sheridan and Rupa Patel (Dkt. 83), Motion for Protective Order (Dkt. 84) and Defendant/Counterclaimant Equinox Clarendon, Inc.'s ("Defendant") Motion to Exclude the expert testimony of Christine Gresham (Dkt. 85; 96), Cross Motion to Exclude the expert testimony of Benjamin Keeney (Dkt. 99), and Motion to Seal (Dkt. 101). The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The Motions are now fully briefed and ripe for disposition. Considering the Motions together with Plaintiff's supporting memoranda (Dkt. Nos. 83; 84), Defendant's supporting memoranda (Dkt. Nos. 96; 98; 101), Plaintiff's oppositions and replies (Dkt. Nos. 97; 105-06), and Defendant's oppositions and replies (Dkt. Nos. 98; 100; 103), it is hereby ORDERED that Plaintiff's Motion to Exclude (Dkt. 83) is DENIED, Plaintiff's Motion for Protective Order (Dkt. 84) is DENIED, Defendant's Motion to Exclude (Dkt. 85; 96) is GRANTED, Defendant's Cross-Motion to Exclude (Dkt. 99) is DENIED, and Defendant's Motion to Seal (Dkt. 101) is DENIED for the reasons that follow.

I. BACKGROUND

Plaintiff filed a Complaint on November 19, 2020, and the Court granted Plaintiff's motion for leave to file an Amended Complaint on April 19, 2022, generally alleging one count that Defendant breached certain conditions of a commercial lease ("Lease") relating to the construction and operation of a fitness club in Arlington, Virginia. *See* Dkt. Nos. 1; 71. Defendant filed a Counterclaim against Plaintiff on October 14, 2021 and an Amended Counterclaim on November 18, 2021, seeking a declaratory judgment that Defendant had not breached the terms of the Lease or, in the alternative, that Plaintiff had breached the terms of the Lease in subsequently reletting the premises to a third-party. *See* Dkt. Nos. 35; 51.

For a recitation of the facts undergirding the Lease dispute between the parties, *see* the Court's prior Memorandum Opinion and Order on Summary Judgment. Dkt. 73 at 1-5.

The Court does however present the facts now relevant to the pending Motion for Protective Order and Motion to Seal. On July 9, 2021, after business between Plaintiff and Defendant had disintegrated, Plaintiff entered into a new arrangement with LTF Lease Company, LLC d/b/a Life Time Fitness ("LTF"). Dkt. 84 at 5. However, that arrangement did not mirror the arrangement between Plaintiff and Defendant. For instance, the LTF Lease includes more square footage and a different annual rent schedule than did the Lease with Defendant. *Compare* Dkt. 100-3 at 11-12 *with* Dkt. 100-2 at 5. On November 12, 2021, Defendant served Plaintiff with discovery requests, including the LTF Lease for purposes of calculating actual damages. Dkt. 84 at 5. On December 29, 2021, Plaintiff produced a copy of the LTF Lease accompanied with a "CONFIDENTIAL" and "ATTORNEYS' EYES ONLY" designation. *Id.* On March 18, 2022, Plaintiff produced a redacted version of the LTF Lease affixed with a "CONFIDENTIAL" designation meant to capture the parts of the contract deemed relevant to the damages question.

*Id.* at 5-6.  On June 15, 2020, Plaintiff advised Defendant that the redacted version of the LTF Lease should be presented at trial rather than the entire unredacted version, which Defendant contests.  *See* Dkt. 100.

On June 24, 2022, Plaintiff sought leave of this Court to file a Motion to Exclude Experts Chris Sheridan and Rupa Patel and a Motion for Protective Order which the Court granted on July 20, 2022, deeming these motions filed.  *See* Dkt. Nos. 83-84; 95.  On July 20, 2022, Defendant filed a Motion to Exclude Expert Testimony of Christine Gresham.  Dkt. 96.  On August 3, 2022, the parties each opposed the motions to exclude their respective experts (Dkt. Nos. 97-98) and Defendant filed a Cross Motion to Exclude Expert Testimony of Benjamin Keeney (Dkt. 99). Defendant also timely filed an opposition to Plaintiff's Motion for Protective Order and attached as an exhibit to that briefing the redacted version of the LTF Lease.  *See* Dkt Nos. 100; 100-3.  On August 4, 2022, Defendant also filed a Motion to Seal the redacted LTF Lease (Dkt. 101) to comply with the Protective Order currently in effect for documents designated as "CONFIDENTIAL" or "ATTORNEY'S EYES ONLY."  *See* Dkt. Nos. 61.  On August 9, 2022, Plaintiff filed its response to both Defendant's opposition to the Motion for Protective Order and to Defendant's Motion to Seal (Dkt. 105), as well as a reply brief in support of its Motion to Exclude (Dkt. 106).  Defendant also filed a reply to Plaintiff's opposition to Defendant's Motion to Exclude.  Dkt. 103.

## II.  MOTIONS TO EXCLUDE EXPERT TESTIMONY

### A. Standard of Review

Federal Rule of Evidence 702 governs the admissibility of expert testimony at trial.  A "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

in issue." Fed. R. Evid. 702(a). An admissible expert opinion generally must be "based on sufficient facts or data," be "the product of reliable principles and methods," and "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d). *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993) adjudges this reliability based on whether such expert opinion turns on a "valid scientific connection to the pertinent inquiry[,]" which the factfinder is tasked with making. In other words, reliability of admissible expert testimony hinges on whether such testimony is "ground[ed] in the methods and procedures of science" rather than in "subjective belief or unsupported speculation." *Id.* at 590. A judge may assess "(1) whether a theory or technique can be or has been tested; (2) whether it has been subjected to peer review and publication; (3) whether a technique has a high known or potential rate of error and whether there are standards controlling its operation; and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community." *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592-94). But these *Daubert* factors "were neither definitive, nor exhaustive . . . depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Cooper*, 259 F.3d at 199-200. For those seeking to testify on the basis of sheer experience rather than a scientific technique, such experts are not required to "rely on anything like a scientific method." *See United States v. Wilson*, 484 F.3d 267, 274 (4th Cir. 2007). Instead, their experiential testimony must be "reliably applied to the facts." *Id.*

Above all, "opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible." *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). "The proponent of the testimony must establish its admissibility by a preponderance of proof." *Cooper*, 259 F.3d at 199. Even if the proponent makes such a showing,

the expert opinion testimony must still survive a Federal Rule of Evidence 403 balancing inquiry. *See De Reyes v. Waples Mobile Home Park Ltd. P'ship*, No. 1:16-cv563, 2017 WL 4509869, at *2 (E.D. Va. Apr. 17, 2017).

## B. Analysis

Plaintiff seeks to exclude Defendant's experts Chris Sheridan and Rupa Patel because those experts' opinions are based on their subjective interpretation of the Lease terms, which they are not qualified to do. Defendant argues that these experts should be permitted to testify at trial as to the items that were and were not included in the alleged final plans sent to Defendant by Plaintiff. Dkt. 98 at 11. To the extent their opinions were considered to entail determinations on the finality of the plans, Defendant argues they were merely responding to Plaintiff's expert Benjamin Keeney's opinions that the plans were "final." *Id.* at 16. As such, Defendant seeks to exclude the testimony of Keeney in the event the Court precludes the testimony of Sheridan and Patel because the testimony of Sheridan and Patel are specific responses to Keeney's assessments. Plaintiff counters that Defendant inappropriately filed its Cross-Motion to Exclude Keeney after the deadline imposed by the Court for seeking leave to file final pretrial motions. Further, Plaintiff submits that Keeney's opinions do not arise from his interpretation of terms in the contract, unlike those opinions proffered by Sheridan and Patel.

Defendant also seeks to exclude the testimony of Christine Gresham, a corporate real estate transactional attorney for Plaintiff, on the basis that she lacks the qualifications to render expert opinions on the disputed drawings. Additionally, Defendant maintains that her experiential opinions are unreliable given she admitted to not reviewing the plans in dispute and because she is not privy to the formation of the work plan specifications appended to these agreements. Instead, Defendant argues that Gresham's opinions are strictly and impermissibly legal interpretations of a

contract and are therefore irrelevant.  Plaintiff in turn maintains that Gresham's testimony is only necessary to rebut Sheridan and Patel's testimony and that if their testimony is excluded, her testimony is no longer needed at trial.  In the event, however, that the Court permits Sheridan and Patel's testimony, Plaintiff urges that Gresham's testimony is no different in providing her professional experience in drafting and negotiating commercial leases in an effort to interpret the contractual obligations of Plaintiff according to the Lease.  Defendant argues that the word "final" is in no way ambiguous and therefore Gresham's testimony should be disallowed, coupled with her lack of technical industry experience with engineering drawings.

      This Circuit has held that a determination of "whether a party breached a contract, as well as the proper interpretation of a contract, are 'question[s] of law,' and an expert cannot give an opinion as to the legal obligations of parties under a contract." *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2021 WL 6690337, at *4 (E.D. Va. Aug. 16, 2021) (quoting *Donnert v. Feld Entertainment, Inc.*, No. 1:13-cv-40, 2013 WL 12097618, at *3 (E.D. Nov. 8, 2013)); *see also Forrest Creek Assocs., Ltd. v. McLean Sav. & Loan Ass'n*, 831 F.2d 1238, 1242 (4th Cir. 1987); *Carlisle v. Allianz Life Ins. Co. of N. Am.*, No. 2:19-cv-565, 2021 WL 5104703, at *7 (E.D. Va. Sept. 13, 2021); *Hopeman Bros., Inc. v. Cont'l Cas. Co.*, No. 4:16-cv-187, 2018 WL 4169282, at *14 (E.D. Va. Jan. 12, 2018) ("In the Fourth Circuit, (and in other circuits), it is well-established that it is typically improper for a court to rely on expert testimony for the purposes of interpreting certain terms and/or clauses of a contract." (internal quotation marks and citation omitted)).  But an expert *may* testify regarding custom and usage in an industry when pertinent to the factfinder's inquiry.  *Compare In re Zetia*, 2021 WL 6690337, at *4 (collecting cases) *with Daubert*, 509 U.S. at 592.

To begin, the Court finds no authority to support that the term "final" may be understood to be an ambiguous term in contractual arrangements. Rather, a strict construction of the term leads the Court to apply and enforce it "according to the [parties'] intent." *Romeo v. Antero Res. Corp.*, No. 1:17-cv-88, 2021 WL 215494, at *3 (N.D. W. Va. Jan. 21, 2021).

The Court first assesses the testimony of Sheridan and Patel. There is no question that these individuals have demonstrated sufficient engineering education, training, and experience to be qualified to testify as experts at trial. *See* Dkt. 98-7 at 4-6. Next, Sheridan and Patel's report provides a side-by-side comparison of the scope of "Landlord's Work" in Exhibit C-1 of the Lease and whether the plans provided to Defendant revealed the satisfaction of those elements. *Id.* at 13-16. But the report also includes responses to Keeney's Report as to whether the March 2019 drawings were "final" and includes numerous assertions related to what is or is not to be considered "final." *See id.* at 22-30. Those opinions touch directly on interpreting "the legal obligations of a parties under a contract" and functionally tell the factfinder what decision to make. *In re Zetia*, 2021 WL 6690337, at *4; *see United States v. Duncan*, 42 F.3d 97, 102 (2d Cir. 1994). As such, the testimony of Sheridan and Patel will be limited at trial to assessments regarding which particulars of Exhibit C-1 were satisfied in the drawings provided to Defendant.[1] Sheridan and Patel may also testify to industry and custom as it applies to the purpose of delivering plans and specifications for a landlord's work as it relates to similar leasing arrangements. This includes discussing whether the omission of certain items in Exhibit C-1 of the Lease could be considered

---

[1] This Court will make a determination of whether Exhibit C-1's scope of work should have been reflected in its entirety in the "final plans and specifications for Landlord's Work" in Exhibit C-2 following the presentation of evidence at trial.

typical in the industry. But the Court will carefully consider objections raised by Plaintiff in the event such testimony creeps into determinations of finality and contract violations more broadly.

Next, the Court visits the proposed expert testimony of Keeney. First, the Court does not consider Defendant's filing of a cross-motion to have violated its order directing the parties to file a motion for leave for each final pretrial motion. Given the cross-motion was predicated on whether the Court approved Plaintiff's motion to exclude in the first instance, the cross-motion is properly before the Court.

As to the merits of Keeney's testimony at trial, he is also qualified to testify as an expert this matter. Dkt. 98-8 at 2-3. However, Keeney's report is replete with judgments as to whether Plaintiff satisfied the conditions of the contract, which will not be admissible at trial. *See, e.g.*, *id*. at 3 ("The drawings submitted on March 20, 2019 were final and included sufficient detail and information regarding the Demised Space as well as the Landlord's Work for the HVAC and mechanical systems because they contained the base building HVAC infrastructure that my team was able to locate prior to having additional information regarding the final tenant design."). Nor may any testimony come in related to Keeney's opinion on communications between the parties to the extent such testimony is supposedly predicated on his expertise rather than his personal knowledge. *See, e.g.*, *id*. at 3-4 (review of email archives to opine on concerns or omissions with the documents exchanged between the parties). However, Keeney may testify as to industry custom and usage of landlord and tenant drawings for this Court to understand the purpose and effect of these plans in a lease arrangement. And as with Sheridan and Patel, Keeney may testify to which aspects of the scope of work in Exhibit C-1 of the Lease appeared in the drawings provided to Defendant and whether it was possible to provide each of those elements at the time required by the Lease.

8

The Court now considers Gresham's testimony. Unlike Sheridan, Patel, and Keeney, Gresham's testimony relies solely on her experience observing similar commercial real estate lease transactions and admits that she has no engineering, architectural, or construction experience. Dkt. 96-1 at 13:15-22. As a result, Gresham's proposed testimony hinges largely on a general reliability analysis rather than a scientific assessment typically prescribed by *Daubert*. *See Wilson*, 484 F.3d at 274. Moreover, she does not purport to have any personal knowledge related to the specific Lease at issue here or any experience in the assembly of the final plans and specifications included in the exhibits of these kinds of leasing arrangements. *See id.* at 26:17-25. Because the Court will not permit Sheridan, Patel, or Keeney to opine on what constitutes final plans and specifications for purposes of fulfilling contractual requirements in the Lease, the Court concludes that Gresham's testimony provides no additional probative value to this dispute. *See Safeway Inc. v. Sugarloaf P'ship, LLC*, 423 F. Supp. 2d 531, 538-39 (D. Md. 2006) (excluding expert testimony opining on certain clauses in a contract "in the context of the custom and usage of the real estate and shopping center industries and commercial leasing specialists," as such testimony did not help determine parties' intent because the expert was not present during the execution of the lease and his opinion was based on legal knowledge); *see also In re Zetia*, 2021 WL 6690337, at *3-7 (E.D. Va. Aug. 16, 2021) (excluding testimony from an expert who did not provide a reliable methodology for his conclusions and only offered testimony that interpreted the contract).

Indeed, Gresham admits that she could not recall any "discussion about anybody's intent" in the negotiation of the Lease either. Dkt. 96-1 at 106:16-107:2. Any perspective she might be able to offer on industry custom is unreliable in light of her admitted inability to speak to the specific elements involved in crafting the final plans and specifications to be provided to the tenant. *See, e.g., id.* at 7-13 (speaking only to a "practical" understanding of the mechanics between

9

exchanging plans in leasing arrangements); *see also United States v. Dorsey*, 45 F.3d 809, 813 (4th Cir. 1995) (expert testimony must assist the trier of fact to understand the evidence or to determine a fact in issue). Further, her testimony as to industry custom would be cumulative to that of Keeney. *See* Fed. R. Evid. 403.

Accordingly, this Court will permit the expert testimony of Sheridan, Patel, and Keeney on a limited basis and exclude Gresham from testifying as an expert.

### III. MOTION FOR PROTECTIVE ORDER AND MOTION TO SEAL

#### A. Standard of Review

Federal Rule of Procedure 26 "confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 36 (1984). "The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). Requests under Rule 26 are equally bound by relevancy to the claims or defenses raised by the parties. Fed. R. Civ. P. 26(b)(1). Even if marked as "CONFIDENTIAL," a party seeking protection from disclosure must show good cause in sealing the document by identifying "specific prejudice or harm that will result" if disclosed. *NewMarket Corp. v. Innospec Inc.*, No. 3:10-cv-503, 2011 WL 2144695, at *4 (E.D. Va. May 25, 2011). The Court's local civil rules further provide that "[o]ptions to file documents under seal are disfavored and discouraged." E.D. Va. Local. Civ. R. 5(C).

At trial, "[t]he public has a right to see what people file in court" derivative of the common law and the First Amendment because "[l]itigation occurs in public." *Gen. Elec. Co. v. Siemens Energy, Inc.*, No. 3:21-cv-25, 2021 WL 8445828, at *2 (E.D. Va. Oct. 6, 2021) (citing *Va. Dep't*

of State Police v. Wash. Post, 386 F.3d 567, 576 (4th Cir. 2004)). This right of access "may be abrogated only in unusual circumstances," *Wash. Post*, 386 F.3d at 576, whereby "the public's right of access is outweighed by competing interests," *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1994). In conducting a balancing test, courts should consider "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 597-608 (1978). In other words, "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana v. City & Cty. of* Honolulu, 447 F.3d 1172, 1179 (9th Cir. 2006) (quoting *Nixon*, 435 U.S. at 598).

B. Analysis

Plaintiff argues that the commercial terms of the LTF Lease must be redacted and the unredacted material sealed because the Protective Order already governing this matter requires it and because of the confidentiality provision governing that agreement. That confidentiality provision, Plaintiff contends, protects LTF from competitors like Defendant who would benefit from learning of LTF's confidentially negotiated contractual arrangements. As such, by marking the unredacted LTF Lease with "ATTORNEYS' EYES ONLY," Plaintiff sought to eliminate the risk of divulging competitive information in the LTF Lease to any of LTF's competitors, including Defendant, during the course of this litigation. Instead, Plaintiff maintains that it has proposed a reasonable, narrowly tailored redacted production of the LTF Lease which achieves the sole value

11

of its use at trial—to identify those provisions which implicate the calculation of actual damages in this case. Indeed, Plaintiff further asserts that the redacted LTF Lease captures all terms requested by Defendant at the time Defendant's counsel reviewed the unredacted version. *See* Dkt. 105 at 2; Dkt. 84 at 12.

Defendant begins by arguing that the Protective Order in effect does not extend confidentiality obligations to documents presented at trial. Defendant then argues that Plaintiff provides "no basis for such redactions" and instead relies unconvincingly on the concern that "disclosure of the terms of the LTF Lease at trial 'to a competitor such as Equinox would be detrimental to Life Time.'" Dkt. 100 at 5-6 (quoting Dkt. 84 at 7). Rather, Defendant urges that a strong presumption of public access to judicial records, including trial exhibits, makes motions to file under seal pursuant to the Court's Local Civil Rule 5 "disfavored and discouraged" and that such a right of public access may only be overcome in "unusual circumstances." *Id.* at 7.

The Court first considers the operative Protective Order signed by Magistrate Judge Davis on January 4, 2022. Dkt. 61. Section (E)(2) of that Order explicitly directs:

> To the extent that any answers to interrogatories, transcripts of depositions, responses to requests for admissions, *or any other papers filed or to be filed with the Court* reveal or tend to reveal information *claimed to be confidential*, these papers or any portion thereof *must be filed under seal by the filing party*.

*Id.* at 9 (emphases added). Defendant triggered this provision when attaching the redacted LTF Lease to its briefing as there is no dispute that the redacted LTF Lease is Bates-stamped with a "CONFIDENTIAL" footer. *See* Dkt. 100-3 at 2-23. Accordingly, pursuant to the current Protective Order in place, such document must be accompanied by a motion to file under seal. Defendant did just that one day after filing. *See* Dkt. 101. The operative Protective Order also confirms in Section (D)(3) that it:

12

> [d]oes not restrict or limit the use of Confidential Discovery Material at any hearing or trial, which is expected to be the subject of a further protective order and/or appropriate court orders. Nonetheless, this Order shall remain in full force and effect until modified, superseded, or terminated on the record by agreement of the Parties, or by order of the court(s) in which the Litigation is pending. Nothing in this Order, however, shall prevent any party from seeking an appropriate protective order to govern such use of Confidential Discovery Material at a hearing or trial.

Dkt. 61 at 9.

The Court thus considers Plaintiff's Motion for Protective Order in compliance with the current Protective Order in place. While Defendant is correct that the current Protective Order does not foreclose disclosure of the LTF Lease at trial, Plaintiff has nonetheless moved for the submission of the redacted LTF Lease at trial. In doing so, the Court applies the *Nixon* factors to weigh the public's interest in accessing each compartment of the LTF Lease with both Plaintiff and LTF's privacy concerns and business interests.

Despite Plaintiff's insistence that it has provided Defendant with all terms in the LTF Lease relevant to the calculation of damages at trial, Plaintiff neglects to provide any detail regarding the sort of information contained in the redactions that risks "annoyance, embarrassment, oppression, or undue burden or expense" on Plaintiff. Fed. R. Civ. P. 26(c)(1)(G). Instead, Plaintiff caters to the perceived "innocen[ce]" of LTF as a third-party and the fact that the terms of the LTF Lease are governed by a confidentiality provision. But the fact that Plaintiff and LTF have included a confidentiality provision in their lease "do[es] not immunize th[at] agreement[] from discovery." *Covil Corp. by and through Protopapas v. U.S. Fidelity & Guaranty Co.*, 544 F. Supp. 3d 588, 603 (M.D.N.C. 2021) (quoting *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 394 F. Supp. 3d 461, 464 (S.D.N.Y. 2019)).[2] Nor does the fact that a filing contains a "sensitive

---

[2] District courts have "roundly rejected" confidentiality provisions in commercial agreements as standalone justification for preventing public disclosure of a document in litigation. *Joo v. Kitchen Table, Inc.*, 763 F. Supp. 2d 643, 648 (S.D.N.Y. 2011); *see also M.F. v. U.S.*, No.

13

commercial document[] that may be accessed by [] competitors" necessitate sealing. *Addax Energy SA v. M/V Yasa H. Mulla*, No. 2:17-cv-641, 2018 WL 10470917, at *13 (E.D. Va. Nov. 13, 2018).

Plaintiff also confuses the standard of review for disclosure of documents at trial. In light of the protective order already in place, they assume that the burden rests on Defendant to demonstrate why the redacted material in the LTF Lease ought to be made presentable at trial when it allegedly appears to be irrelevant to the damages inquiry. *See* Dkt. 105 at 3-5. Quite the opposite. Plaintiff must demonstrate why the presumed public right of access to court documentation is outweighed by the factors raised in *Nixon* to render this case "unusual" and therefore merit a protective order at trial.[3] A standard commercial lease between two private parties with a confidentiality provision cannot overcome "the presumption in favor of public disclosure of court records" as "a significant countervailing interest." *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003). Instead, Defendant seeks to introduce the LTF Lease at trial for the proper purpose of calculating damages and to also provide context around the actions taken

---

13-cv-1790-JLR, 2015 WL 630946, at *3 (W.D. Wash. Feb. 12, 2015); *Luo v. Zynga Inc.*, No. 13-cv-0186-NC, 2013 WL 5814763, at *3 (N.D. Cal. Oct. 29, 2013).

[3] As already noted, the protective order currently in place specifies that its provisions "[d]o[] not restrict or limit the use of Confidential Discovery Material at any hearing or trial, which is expected to be the subject of a further protective order and/or appropriate court orders." Dkt. 61 at 9. This makes sense given that at the time of entering the current protective order, the parties had not fully explored the potential utility of each discovered document. Following the close of discovery, the Court must make a wholesale assessment of which documents still necessitate protection at trial in light of the public's right of access to documents *filed* on the docket and presented during trial.

Case 1:20-cv-01433-RDA-IDD Document 107 Filed 10/04/22 Page 15 of 18 PageID# 2985

by Plaintiff during its exchanges with Defendant in the lead-up to the purported termination of the Lease. *See Stephens v. Cty. of Albemarle*, 422 F. Supp. 2d 640, 645 (W.D. Va. 2006).[4]

Ultimately, Plaintiff failed to submit to the Court a copy of the unredacted LTF Lease for *in camera* inspection or signal to the Court what categories of information are particularly sensitive for its competitor to see at trial such as "confidential customer lists, confidential sales or marketing information, or other highly sensitive proprietary commercial or financial information." *NewMarket Corp.*, 2011 WL 2144695, at *4. Plaintiff "must set forth specific and particular facts, rather than broad conclusory statements as to why a protective order should issue." *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 377 (D. Md. 2014). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not satisfy Plaintiff's requirement to show good cause. *Springs v. Ally Fin. Inc.*, 684 F. App'x 336, 338 (4th Cir. 2017). Plaintiff "bears the *weighty burden of showing the existence* of good cause for the issuance of a protective order." *Big Ernie's, Inc. v. United States*, No. 1:09-cv-122, 2009 WL 3166839, at *1 (E.D. Va. Aug. 13, 2009) (emphasis added). Without the necessary information available for review, the Court must defer to the strong presumption of public access at trial. Defendant has also conveyed to the Court that portions of the redacted material in the LTF Lease would reveal "which lease spaces" LTF could apply its tenant improvement allowance toward. That

---

[4] This Court, however, will not entertain any attempts by Defendant to use certain aspects of the LTF Lease "to gratify private spite or promote public scandal," and will carefully consider the relevance of all aspects of the LTF Lease which are discussed at trial. *Nixon*, 435 U.S. at 599.

determination would directly impact the calculation of profit or loss incurred by Plaintiff with respect to the space initially leased to Defendant with the same space subsequently leased to LTF.[5]

If Plaintiff considers any material from the LTF Lease to be irrelevant at trial, it may exercise a proper objection under Federal Rule of Evidence 403. To the extent the parties are amenable to stipulating post-trial that the LTF Lease be sealed, the Court encourages them to do so. Regardless, Plaintiff may move to have the LTF Lease kept entirely under seal following the conclusion of the trial. At this stage, however, the Court sees no good cause to seal the redacted LTF Lease or to prevent the production of the unredacted LTF Lease at trial.

## IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion to Exclude (Dkt. 83) is DENIED; and it is

FURTHER ORDERED that Plaintiff's Motion for Protective Order at trial (Dkt. 84) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Exclude (Dkt. 85; 96) is GRANTED; and it is

FURTHER ORDERED that Defendant's Cross-Motion to Exclude (Dkt. 99) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Seal the redacted lease (Dkt. 101) is DENIED; and it is

---

[5] This exercise is necessary given that the LTF Lease includes more square footage and a different annual rent schedule compared to the Lease with Defendant. *Compare* Dkt. 100-3 at 11-12 *with* Dkt. 100-2 at 5.

FURTHER ORDERED that the bench trial scheduled for Monday, October 31, 2022 will begin promptly at 10:00 a.m. in courtroom 601 unless otherwise notified; and it is

FURTHER ORDERED that the Parties abide by the following requirements imposed by the Court in anticipation of trial.

The Court permits electronic devices to be used to aid in the presentation of the evidence at trial with the Court's prior authorization. In order to use the Court's evidence presentation system, the parties must also obtain the Court's authorization prior to trial. The parties must submit the requisite forms via CM/ECF no later than one (1) week prior to trial, which is **October 24, 2022**. Those are available here: https://tinyurl.com/c4ban5v2. The parties are advised to bring the approved form(s) to the courthouse on the dates requested and to present it to the Court Security Officers (CSOs) at the entrance of the courthouse.

Orientation prior to any use of the evidence presentation system is required. Once the parties have obtained the Court's approval to use the evidence presentation system, please email the Court Technology Administrator at courtroom_tech@vaed.uscourts.gov to schedule an orientation. Please include the anticipated date(s) of orientation on the electronic authorization form submitted to the Court. Orientations are solely for the purpose of learning how to use the evidence presentation system and testing the attorney's laptop computer connections;

No later than one week prior to trial, on or before **October 24, 2022**, the Parties shall file with the Clerk's Office all trial exhibits to be used, an exhibit list, a witness list, and proposed findings of fact and conclusions of law, with copies to Chambers. The Parties shall have pre-marked for use at trial all exhibits they intend to use with sufficient copies for opposing counsel and the Court.

In the event the Parties anticipate significant, unresolved issues, other than those that have been addressed by the Court, please alert the Court as soon as possible by contacting my law clerk via e-mail, blake_delaplane@vaed.uscourts.gov, or phone, 703-299-2100.

It is SO ORDERED.

Alexandria, Virginia
October 4, 2022

/s/
Rossie D. Alston, Jr.
United States District Judge